# EXHIBIT 1

IN THE CIRCUIT COURT FOR THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, ILLINOIS

COUNTY OF UNION ILLINOIS AND THE
PEOPLE OF THE STATE OF ILLINOIS, *ex rel.* TYLER EDMONDS, STATE'S
ATTORNEY FOR THE COUNTY OF
UNION, ILLINOIS AND BOBBY TOLER,
CLERK OF THE COUNTY OF UNION,
ILLINOIS on behalf of the County of Union,
Illinois and all Counties in Illinois,

                      Plaintiffs,

              v.

MERSCORP, INC.; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC.; JPMORGAN CHASE BANK, N.A.;
BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.; RBS CITIZENS,
N.A.; RBS SECURITIES, INC.; CITIGROUP
INC.; CITIMORTGAGE, INC.; CITIBANK,
N.A.; DEUTSCHE BANK NATIONAL
TRUST COMPANY; EVERBANK; GMAC
MORTGAGE LLC; HSBC BANK, U.S.A.
N.A.; KEYBANK NATIONAL
ASSOCIATION; NATIONWIDE
ADVANTAGE MORTGAGE
CORPORATION; SUNTRUST MORTGAGE,
INC.; U.S. BANK NATIONAL
ASSOCIATION; WELLS FARGO BANK,
N.A.; AND DEFENDANTS DOE
CORPORATIONS 1-100, *et al.*,

                    Defendants.

Case No.:  12 L 6

Amended Class Action Complaint



FILED
APR 2 6 2012

*Lorrain N. Oarland*
CLERK OF THE CIRCUIT COURT
FIRST JUDICIAL CIRCUIT
UNION COUNTY, ILLINOIS

Plaintiffs, State's Attorney Tyler Edmonds and Union County Clerk Bobby Toler, on

behalf of Union County and all other Illinois counties ("Plaintiffs"), for their Class Action

Complaint, allege the following upon personal knowledge as to themselves and their own acts,

- 1 -

and as to all other matters upon information and belief, based upon the investigation made by and through their attorneys, which included, *inter alia*, review of publicly available materials.

## NATURE OF THE ACTION

1.     Plaintiffs bring this action to remedy Defendants' failure to record all mortgage assignments with the Union County Clerk and all County recording offices across the State of Illinois, and pay the attendant recording fees, as required by Illinois law.

2.     Enacted in 1873, Illinois's recording statute provides that all "mortgages . . . and other instruments relating to or affecting the title to real estate in this state, *shall be recorded in the county in which such real estate is situated . . . .*" 765 ILCS 5/28 (emphasis added, hereinafter the "Recording Statute").

3.     This recording system provides landowners, mortgage holders, potential purchasers and other others with notice when an estate or interest in real property is created, transferred, mortgaged or assigned.  The recording system also provides interested parties with a reliable and accurate repository of valid instruments essential to establishing ownership and chain of title.

4.     Illinois law also provides that county recorders, who are elected officials responsible for maintaining their county's public land records, "*shall* receive fees" for recording deeds, assignments of mortgages and other instruments.  55 ILCS 5/3-5018 (emphasis added).

5.     These requirements impose a cost on Defendants to comply, especially when dealing with multiple transfers of a single property, such as in mortgage securitizations.

6.     Mortgage securitizations are popular financial practices developed and implemented by Wall Street involving the assignment of mortgages among Defendants and other banking or financial institutions in order to pool the mortgages into trusts that can, in turn, issue

- 2 -

mortgage-backed securities for sale to investors. In this securitization process, mortgages are typically assigned multiple times.

7.      In order to make securitizations easier and more profitable by unlawfully avoiding the recording of intermediate assignments with county recorder officers and, thereby, avoiding the payment of county recording fees, Defendants and others in the mortgage industry have purposely failed to record mortgage assignments as required by the Recording Statute.

8.      To accomplish these goals, Defendants and others created the Mortgage Electronic Registration System, Inc. ("MERS") and began to record land instruments in the name of this private corporate entity that they contended could act as their placeholder in county public records should they want to use public records to alter or foreclose on the mortgage.

9.      In other instances, Defendants and others simply failed to record mortgage assignments in county recording offices at all.

10.     One of the purposes of the Illinois recording statute is to give all persons the opportunity to ascertain the true status of title to property in the State of Illinois. The MERS system undermines this purpose by concealing the true owner of the promissory note. Before MERS, the current holder of a mortgage could be identified by checking public records for the last assignment of mortgage. Under the MERS system, assignments are typically not filed except when the mortgage is initially assigned to MERS. As a result, when MERS is the nominee for a mortgage, borrowers, investors and other interested parties cannot determine who owns the note and the mortgage by checking public records; nor can the borrower or public obtain this information from MERS. Thus, by shielding the identity of the note and mortgage holder, MERS makes it extremely difficult for borrowers to track down the real party behind their loan and to enforce their legal rights. The practice also interferes with the ability of those

- 3 -

who wish to invest in real estate, either for residential or commercial purposes, to easily ascertain the true title holder to property.

11.     Defendants, therefore, have violated and continue to violate the Illinois Recording Statute by (a) purposely failing to record all mortgage assignments, thereby systematically clouding title in Illinois county land records, and (b) purposely avoiding the payment of substantial county recording fees.

12.     Plaintiffs bring this action for violation of 815 ILCS 505/2, unjust enrichment, civil conspiracy, and declaratory and injunctive relief to remedy Defendants' misconduct.

## JURISDICTION

13.     This Court has subject matter jurisdiction over this matter pursuant to Article VI, Section 9 of the Illinois Constitution.  IL CONST. ART. VI, § 9.

14.     Venue is appropriate in Union County pursuant to 735 ILCS 5/2-101 because the transactions or some part thereof that gave rise to this lawsuit occurred in Union County, Illinois.

15.     This Court has personal jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants transacted business in Illinois, committed tortious acts that emanated from Illinois and each Defendant has sufficient minimum contacts with Illinois so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

16.     There is no federal jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332(d), because diversity does not exist between Plaintiffs or any member of the Class and Defendants.

## PARTIES

17.     Plaintiff Union County is located in the State of Illinois.  Pursuant to 55 ILCS 5/3-9005(a)(1) and 55 ILCS 5/3-9008, Plaintiff Union County, by and through Tyler Edmonds as the State's Attorney for Union County, sues on behalf of itself and all other Illinois counties.

18.     Plaintiff Bobby Toler is the Union County Clerk and is, like all county recorders in the State, authorized by 55 ILCS 5/3-5018 to collect fees for recording deeds, assignments of mortgages and other instruments relating to or affecting the title to real estate in this county.

19.     Union County has authorized this lawsuit.

20.     Defendant MERSCORP, Inc. ("MERSCORP") is a Delaware corporation with its principal place of business in Vienna, Virginia.  MERSCORP owns and operates the MERS System, which is a national registry that tracks ownership and servicing rights in residential mortgage loans, including residential mortgage loans secured by real property located in the State of Illinois.

21.     Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation with its principal place of business in Reston, Virginia.  MERS is a wholly owned subsidiary of MERSCORP, Inc., and regularly conducts business in the State of Illinois.

22.     Defendant JPMorgan Chase Bank, N.A. ("Chase"), individually, and as successor by merger to Chase Home Finance, LLC, is a national banking association with its principal place of business in Columbus, Ohio.  As described below, Chase, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Chase Home Finance LLC, Chase Home Finance Inc., Chase Home Mortgage Corp., Chase Manhattan Mortgage Corporation, Chase Mortgage Services Inc., WaMu Bank, WaMu Capital, WaMu Securities, WaMu Acceptance, Bank One Corporation, EMC Mortgage LLC, and EMC Mortgage Corporation, engaged in transactions related to the securitization of

- 5 -

mortgage loans of real property located within the State of Illinois. Chase is a shareholder of the MERS Defendants.

23.     Defendant Bank of America Corporation ("Bank of America Corp."), individually, and as successor by merger to CWALT, Inc., Countrywide Home Loans, Inc., Countrywide Financial Corporation, is a Delaware corporation with its principal place of business in Charlotte, North Carolina. As described below, Bank of America Corp., either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation CWALT, Inc., Countrywide Home Loans, Inc., Countrywide Financial Corporation BAC Home Loans Servicing LP (f/k/a Countrywide Home Loans Servicing, LP), BAC GP, LLC (f/k/a Countrywide GP, Inc., and Countywide GP LLC), engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. Bank of America Corp. is a shareholder of the MERS Defendants.

24.     Defendant Bank of America, N.A. ("Bank of America"), individually, and as successor by merger to LaSalle Bank National Association, is a national banking association with its principal place of business in Charlotte, North Carolina. As described below, Bank of America, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation BAC Home Loans Servicing LP (f/k/a Countrywide Home Loans Servicing, LP), BAC GP, LLC (f/k/a Countrywide GP, Inc., and Countywide GP LLC), engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. Bank of America is a shareholder of the MERS Defendants.

25.     Defendant RBS Citizens, N.A. ("RBS Citizens") is a national banking association with its principal place of business in Providence, Rhode Island. As described below, RBS

Citizens, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation American Home Funding, Inc., Charter One Mortgage Corporation, Charter One Mortgage Servicing, Charter One Bank, Greenwich Capital Financial Products, Inc., Greenwich Capital Acceptance Inc., and RBS Securities Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois.  RBS Citizens is a shareholder of the MERS Defendants.

26.     Defendant RBS Securities, Inc. ("RBS Securities") is a wholly owned subsidiary of The Royal Bank of Scotland Plc., with its principal place of business in Stamford, Connecticut.  As described below, RBS Securities, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation American Home Funding, Inc., Charter One Mortgage Corporation, Charter One Mortgage Servicing, Charter One Bank, Greenwich Capital Financial Products, Inc., Greenwich Capital Acceptance Inc., and RBS Securities Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois.  RBS Securities is a shareholder of the MERS Defendants.

27.     Defendant Citigroup Inc. ("Citigroup") is a New York corporation with its principal place of business in New York, New York.  As described below, Citigroup, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Citigroup Financial Products, Inc., Citigroup Global Markets Realty Corp., Citigroup Mortgage Loan Trust Inc., Citibank, N.A., CitiMortgage, Inc., Citi Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Principal Residential Mortgage, Inc., and Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans

- 7 -

of real property located within the State of Illinois. Citigroup is a shareholder of the MERS Defendants.

28.     Defendant Citibank N.A. ("Citibank") is a national banking association with its principal place of business in New York, New York. As described below, Citibank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation CitiMortgage, Inc., Citi Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Principal Residential Mortgage, Inc., and Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. Citibank is a shareholder of the MERS Defendants.

29.     Defendant CitiMortgage, Inc. ("CitiMortgage") is a New York corporation with its principal place of business in O'Fallon, Missouri. As described below, CitiMortgage, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Citibank, N.A., Citi Residential Lending, Inc., Citicorp Acceptance Company, Inc., CitiFinancial, Inc., CitiFinancial Mortgage Company, Inc., Citigroup Mortgage Loan Trust, Inc., Principal Residential Mortgage, Inc., and Wholesale Mortgage, Inc., engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. CitiMortgage is a shareholder of the MERS Defendants.

30.     Defendant Deutsche Bank National Trust Company ("Deutsche Bank") is a federally chartered non-depository trust company with its principal place of business in Santa Ana, California. As described below, Deutsche Bank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the

- 8 -

securitization of mortgage loans of real property located within the State of Illinois. Deutsche Bank is a shareholder of the MERS Defendants.

31.     Defendant EverBank (f/k/a EverHome Mortgage Company, d/b/a EverHome Mortgage) ("EverHome"), is a federal savings association, wholly owned by EverBank Financial Corporation, a privately held Florida corporation. As described below, EverHome, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation EverHome Mortgage Corporation, EverBank Mortgage Company, and EverBank Mortgage Company, LLC, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. EverHome is a shareholder of the MERS Defendants.

32.     Defendant GMAC Mortgage LLC ("GMAC"), a limited liability company whose sole ultimate member is Ally Financial, Inc., is a Delaware corporation with its principal place of business in Detroit, Michigan. As described below, GMAC, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation GMAC Bank, GMAC Commercial Mortgage Corporation, GMAC Relocation Services, Inc., GMAC LLC, and GMAC Mortgage Corporation, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. GMAC is a shareholder of the MERS Defendants.

33.     Defendant HSBC Bank, U.S.A., N.A. ("HSBC") is a national banking association with its principal place of business in McLean, Virginia. As described below, HSBC, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation HSBC Mortgage Corp., U.S.A, HSBC Bank U.S.A Trust, and HSBC Mortgage Services, Inc., engaged in transactions related to the securitization of mortgage

- 9 -

loans of real property located within the State of Illinois.  HSBC is a shareholder of the MERS Defendants.

34.     Defendant KeyBank National Association ("KeyBank") is a national banking association with its principal place of business in Cleveland, Ohio.  As described below, KeyBank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois.  KeyBank is a shareholder of the MERS Defendants.

35.     Defendant Nationwide Advantage Mortgage Corporation ("Nationwide") is an Iowa Corporation with its principal place of business in Des Moines, Iowa.  As described below, Nationwide, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Nationwide Bank, Nationwide Home Mortgage Corporation, Nationwide Mortgage Concepts, Nationwide Mortgage Services, Inc., and Nationwide Title Clearing, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois.  Nationwide is a shareholder of the MERS Defendants.

36.     Defendant SunTrust Mortgage, Inc. ("SunTrust") is a Virginia corporation with its principal place of business in Richmond, Virginia.  As described below, SunTrust, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation SunTrust Bank and SunTrust Financial Corporation, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. SunTrust is a shareholder of the MERS Defendants.

37.   . Defendant U.S. Bank National Association ("US Bank") is a national banking association with its principal place of business in Minneapolis, Minnesota.  As described below,

US Bank, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. US Bank is a shareholder of the MERS Defendants.

38.     Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), individually, and as successor by merger to Norwest Bank, N.A., and Wells Fargo Bank of Minnesota, N.A. is a national banking association with its principal place of business in Sioux Falls, South Dakota. As described below, Wells Fargo, either directly and/or indirectly through its agents, employees, subsidiaries and/or related companies, including without limitation Wells Fargo Funding Home Equity, Wells Fargo Home Mortgage, Inc., Wells Fargo America, Inc., America's Outsource Mortgage Program, and Wells Fargo Bank Ohio, engaged in transactions related to the securitization of mortgage loans of real property located within the State of Illinois. Wells Fargo is a shareholder of the MERS Defendants.

39.     The true names and capacities of Defendants Doe Corporations 1-100 are unknown to Plaintiffs. Plaintiffs believe that through discovery, the identity of Defendants Doe Corporations 1-100 will become known to Plaintiff. Defendants Doe Corporations 1-100 actively participated in the illegal actions described throughout this Complaint.

40.     In addition to each Defendant's individual liability for the illegal activities described throughout this Complaint, the shareholders of the MERS Defendants should be held responsible for the liabilities of the MERS Defendants by piercing the corporate veil or pursuant to any other applicable legal doctrine. Upon information and belief, the MERS Defendants were and remain undercapitalized in light of the nature and risk of the business they undertake. Further, the shareholders of the MERS Defendants hide behind this corporate fiction to justify the illegal activity described below, which includes but is not limited to, falsely recording the

- 11 -

title to property with the Union County Recorder and other County Recorders throughout the State of Illinois.  Recognizing the corporate existence of the MERS Defendants separate from their shareholders would cause an inequitable result and injustice, cloaking the fraudulent and illegal activities described throughout this Complaint.

FACTUAL BACKGROUND

**A.    Illinois Law Requires that Certain Land Instruments Be Recorded In County Recording Offices**

41.    In a typical real property purchase transaction, a borrower receives a loan from an originating lender that is evidenced by a promissory note, and which is secured by a mortgage or deed of trust on the purchased real property.[1]  The mortgage is an instrument that grants the lender a security interest in the borrower's property, generally a first lien, to secure repayment of the loan.

42.    Illinois law requires that "[d]eeds, mortgages, powers of attorney, and other instruments relating to or affecting the title to real estate in this state, *shall be recorded* in the county in which such real estate is situated . . . .  No deed, mortgage, assignment of mortgage, or other instrument relating to or affecting the title to real estate in this State may include a provision prohibiting the recording of that instrument . . . ."  765 ILCS 5/28 (emphasis added).

43.    County recorders, who are elected officials responsible for maintaining their county's public land records, are required to collect fees for each mortgage-related land instrument presented and entitled to be recorded.  Illinois law also provides that county recorders

---

[1] Mortgages and deeds of trust are collectively referred to herein as "mortgages."

"*shall* receive fees" for recording deeds, assignments of mortgages and other instruments. 55 ILCS 5/3-5018 (emphasis added).[2]

44.      One of the purposes of Illinois's recording statute is to give persons the opportunity to ascertain the true status of title to property in the State of Illinois. County recorders systematically record land documents to develop a public record of ownership over each parcel of land, as well as the debt attached to that land. Each time an interest in the land is assigned (i.e., transferred or sold) to a new owner, a written document – such as a mortgage assignment – evidencing the transaction is supposed to be recorded. The Illinois Recording Statute ensures that county recorders' offices maintain accurate chains of title and reliable public records that are used, for instance, to allow prospective purchasers to investigate the land ownership interests tied to a specific parcel of land, or to resolve land ownership disputes.

**B.      Mortgage Loan Securitizations**

45.      Lending banks originate residential mortgage loans. They sell many of the loans to commercial and investments banks, which, in turn, sell the mortgage loans amongst themselves and then pool them into trusts to be issued to investors as mortgage-backed securities ("MBS"). Each "sale" requires an assignment of the mortgage loan.

46.      This process of "securitization" typically involves a four-step procedure as follows:

      a.      First, mortgage originators sell mortgage loans to warehouse lenders ("Sellers"), who assemble portfolios of varying types of mortgage loans.

      b.      Second, the Seller sells its portfolio of mortgage loans to "Sponsors," who are entities, often affiliated with a large financial institution or investment bank, that

---

[2] Pursuant to 55 ILCS 5/3-5001, the County Clerk carries out the duties assigned to County Recorders in counties with a population less than 60,000.

initiate the securitization of their portfolio of mortgage loans.  (Sellers may also be the Sponsor.)

c.  Third, the Sponsor initiates securitization by selling its mortgage loans to the "Depositor" pursuant to a Mortgage Loan Purchase Agreement.  The sale is typically done through an assignment or transfer.  Generally, the parties to the Mortgage Loan Purchase Agreement are:  (i) the Seller/Sponsor; (ii) Purchaser/Depositor; and (iii) the Guarantor.

d.  Fourth, the Depositor, acting as an intermediate entity between the Sponsor and the trust, sells pools of mortgage loans to a trustee ("Trustee"), on behalf of a trust, or issuing entity, pursuant to a Pooling and Servicing Agreement ("PSA").[3] When a trust is created, the Depositor, pursuant to the PSA, transfers all of its rights and interests in each mortgage loan and mortgage note into the trust.[4]

47.  Financial institutions, including Defendants, profited from the securitization process by purchasing mortgage loans from loan originators and securitizing the mortgage loans for sale to investors, thereby generating fees for the banks.  These same institutions also moved the mortgage loans – and their inherent risk of default – off their books by passing risks of default onto the MBS investors.

48.  In the typical securitization process, as just described, three or more assignments of the mortgage are made.  Each assignment was statutorily required to be recorded in the Illinois

---

[3] Formed by the PSA, a trust is typically a "special purpose vehicle" that holds many pools of mortgage loans ("trust assets") for the eventual issuance of MBS for sale to investors. The MBS represent partial beneficial interests in the trust assets, which are mostly comprised of the mortgage loans.  Generally, the parties to the Pooling and Servicing Agreement are:  (i) the Seller/Sponsor; (ii) the Depositor; (iii) the Trustee; and (iv) the varying groups of Servicers.

[4] A "Trustee" also enters into contracts on behalf of the trust and administers the trust's funds, and is considered by courts to be the legal owner of the "Trust Estate," which includes in part all mortgage loans.

county recording office in which the underlying property is located. But, as detailed below, this was not done, as Defendants used MERS to avoid the recording of intermediate assignments with county recorder officers and, thereby, undermining the disclosure purposes of the recording statute and avoiding the payment of county recording fees.

**C.     MERS – How The Scheme Works**

49.     MERS, a subsidiary of MERSCORP, is a private firm created to masquerade as the title holder in Illinois' public records. Defendants, with others, created, maintain, and operate MERS for the specific purpose of circumventing Illinois' recording laws for the benefit and convenience of Defendants and other MERS "members" and to facilitate the securitization process.

50.     The other Defendants are "shareholders" and/or "Members" of MERS and, in conjunction with MERSCORP, completely control MERS and its activities. MERS Members consist of a variety of banking and mortgage entities, including local banks, national investment banks, mortgage lenders, title insurers, and mortgage servicers. Each Member pays a membership fee to register and track mortgage ownership interests and servicing rights on MERS's system and transaction fees to MERS for each transaction conducted. Fees are paid to assign a mortgage to MERS or another MERS Member, to search for a servicer for a particular mortgage, or to use the MERS corporate seal. The general public is NOT allowed to see the MERS records, or to determine in the private MERS system the status of a given piece of property on a given date.

51.     When a lender that is a member of MERS makes a mortgage loan, the lender typically records the initial land instrument, on which "MERS" is named, in Union County and other county recording offices in one of two ways:

- 15 -

a.     Defendants record an original mortgage on which "MERS" is a designated beneficiary, using language such as "MERS as mortgagee of record," "MERS as nominee," "MERS as beneficiary," and "MERS (solely as nominee for Lender) as beneficiary." MERS and its Members use the term "MERS as Original Mortgagee (MOM)" to describe this type of mortgage.

b.     Alternatively, Defendants record a mortgage assignment on which "MERS" is named. On such mortgage assignments, Members often purport to assign the mortgage and underlying debt either to: (i) MERS itself; or (ii) MERS on behalf of another Member.

52.     MERS, however, admits that it does not draft or execute land instruments on behalf of itself or its Members. Rather, MERS instructs its Members to self-certify their employees (*e.g.*, employees of the lending banks and mortgage servicers) as MERS "assistant secretaries" and/or MERS "vice-presidents" so the Members' staff can appear as though they work for MERS, even though they do not. To self-certify, Members' staff download certification forms directly off of MERS's website.

53.     Once they self-certify, Members' staff draft and execute land instruments purporting to be "MERS assistant secretaries" and "MERS vice-presidents." County recorders, therefore, accept and record what facially appear to be land instruments signed by "MERS" employees, even though the documents were actually prepared by Members' staff.

54.     Further, MERS Members contend that, as long as mortgage ownership interests are assigned to other MERS Members, they are not required to record each mortgage assignment in county recording offices because MERS acts on behalf of both the assignor and assignee (representing both MERS Members simultaneously).

- 16 -

55.     The representation that MERS is a grantee or mortgagee or beneficiary is false. MERS does not own, originate, assign, service, or invest in mortgages. Rather, MERS Members simply use the "MERS" name to avoid recording in county recording offices each time a mortgage is assigned and thereby avoid paying the attendant county recording fees for each such transaction.

56.     According to the MERS scheme, MERS is the "mortgagee" or "beneficiary" of record in more than 65 million mortgages filed in the records of various counties throughout the United States. Yet, MERS is neither a borrower nor a lender. According to MERS' own admissions, MERS has no interest in the mortgage and no rights to payment under the note:

> MERS has no interest at all in the promissory note evidencing the mortgage loan. MERS has no financial or other interest in whether or not a mortgage loan is repaid...
>
> MERS is not the owner of the promissory note secured by the mortgage and has no rights to the payments made by the debtor on such promissory note.... MERS is not the owner of the servicing rights relating to the mortgage loan and MERS does not service loans. In essence, MERS immobilizes the mortgage lien while transfers of the promissory note and servicing rights continue to occur.[5]

57.     MERS has also admitted that under its agreement with its mortgage-lender members, MERS "cannot exercise, and is contractually prohibited from exercising, any of the rights or interests in the mortgages or other security documents," and that MERS has "no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans."[6]

---

[5] *MERS, Inc. v. Nebraska Dept. of Banking and Fin.,* 704 N.W.2d 784 (Neb. 2005), Brief of Appellant at 11-12 (citations omitted).

[6] *Id.* at 10.

58.     MERS cannot be the "mortgagee" in, or "beneficiary" of, a mortgage to which the beneficial interest "runs to the owner and holder of the promissory note."[7]  As one court recently noted:

> MERS and its partners made the decision to create and operate under a business model that was designed in large part to avoid the requirements of the traditional mortgage recording process.  This Court does not accept the argument that because MERS may be involved with 50% of all residential mortgages in the country, that is reason enough for this Court to turn a blind eye to the fact that this process does not comply with the law. ...
>
> Aside from the inappropriate reliance upon the statutory definition of "mortgagee," MERS's position that it can be both the mortgagee and an agent of the mortgagee is absurd, at best.... This Court finds that MERS's theory that it can act as a "common agent" for undisclosed principals is not supported by the law.  The relationship between MERS and its lenders and its distortion of its alleged "nominee" status was appropriately described by the Supreme Court of Kansas as follows:  "The parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant – their description depended on which part they were touching at any given time."  *Landmark Nat'l Bank v. Kesler,* 216 P.3d 158, 166-67 (Kan. 2010).[8]

59.     While admitting they do not record assignments in county recording offices, Defendants often fail to register mortgage assignments on MERS's private system as well.

60.     Indeed, Defendants often only record a mortgage assignment (regardless of how many times the mortgage had been assigned prior) in county recording offices when they are attempting to assign the mortgage from MERS.  This generally occurs when Defendants seek to initiate a terminating event (*e.g.*, to foreclose when the mortgage is in default, or to release when the mortgage is refinanced or satisfied).

---

[7] *Id.* at 11-12.

[8] *In Re Agard*, 444 BR 231 (E.D.N.Y. 2011).

**D.    The Damage Inflicted By The Scheme**

61.    Since 1997, approximately 60% of all mortgages — tens of millions of them — have been registered on MERS' system.  Today, nearly 5,600 participating MERS members "track" roughly 31 million active residential mortgage loans on the MERS system.

62.    According to many observers, the MERS System has created massive confusion as to the true owners of beneficial interests in mortgage loans and mortgages throughout the United States.  By failing to record all mortgage assignments, MERS Members break a mortgage's chain of title, creating a "gap" in county public land records.

63.    When MERS is the nominee for a mortgage, borrowers, investors and other interested parties cannot determine who owns the note and the mortgage by checking public records; nor can the borrower or public obtain this information from MERS.  Thus, by shielding the identity of the note and mortgage holder, MERS makes it extremely difficult for borrowers to track down the real party behind their loan and to enforce their legal rights.  The practice also interferes with the ability of those who wish to invest in real estate, either for residential or commercial purposes, to easily ascertain the true title holder to property.

64.    The havoc wrought by MERS was summarized aptly in an April 6, 2011, letter from the Guilford County, North Carolina Register of Deeds and Southern Essex District of Massachusetts Register of Deeds to Iowa Attorney General Tom Miller, leader of the Mortgage Foreclosure Multistate Group, comprised of state attorneys general in all 50 states.  The letter outlines the concerns shared by county clerks and recorders nationwide and states, in part:

> As County Land Recorders in Massachusetts and North Carolina, we have been gravely concerned about the role of the Mortgage Electronic Registration System (MERS) in not only foreclosure proceedings, but as it undermines the legislative intent of our offices as stewards of land records.  MERS tracks more than 60 million mortgages across the United States and we believe it has assumed a role that has put constructive notice and the property

- 19 -

rights system at risk. We believe MERS undermines the historic purpose of land record recording offices and the "chain of title" that assures ownership rights in land records.

As a result, we are asking as part of your probe, that this task force and the National Association of Attorney Generals require that all past and present MERS assignments of deeds of trust/mortgages be filed in local recording offices throughout the United States immediately. Assignments are required by statute to be filed in Massachusetts, however they are not currently required to be recorded in North Carolina. We feel, that it is important that the Registers of Deeds should have representatives at the table before any settlement is discussed or agreed to as it relates to MERS failure to record assignments and pay the proper fees.

This action would serve three specific purposes. First, the filing of all assignments would help recover the chain of title that determines property ownership rights that has been lost and clouded over during the past 13 years because of the scheme that MERS has set in place. Second, transparency and confidence in ownership rights would be restored and this would prevent the infringement upon those rights by others. Third, this action would support a return to sound fundamentals in our economy between the financial services industry and public recording offices.[9]

65.    Furthermore, the MERS System has caused the loss of substantial revenues to counties throughout Illinois, including Union County. Upon information and belief, Union County and the other Illinois counties have been damaged tens-of-millions of dollars as a direct result of Defendants' illegal activities described herein.

66.    MERS Members rationalize their failure to properly and publicly record all intermediate assignments in county recording offices by reasoning that as long as mortgage ownership interests are assigned to other MERS members, they need not be recorded in county recording offices because MERS handles that recordkeeping internally. The Illinois Recording Statute, however, provides no such exception to its recording requirements.

---

[9] http://www.co.guilford.nc.us/departments/rod/ROD_Letter_To_AG_Miller.pdf.

## CLASS ALLEGATIONS

67.     Plaintiffs bring this action as a class action pursuant to 735 ILCS 5/2-801 on behalf of the following Class:  All counties in the State of Illinois.

68.     *Numerosity*.  The members of the Class are so numerous that joinder of all members is impracticable, given that there are 102 counties in the State of Illinois.

69.     *Typicality*.  Plaintiffs' claims are typical of the claims of the members of the Class, because (i) Illinois state law is applicable to all claims asserted by the Class; (ii) Illinois' recording requirements apply uniformly in each of Illinois' 102 counties for each of the mortgage and mortgage assignments at issue; and (iii) every Illinois county is subject to the same statutory provisions requiring the collection of recording fees for the mortgage and mortgage assignments at issue, thus, the damages sought are similar and will be calculated in the same way.

70.     *Adequacy*.  Plaintiffs will fairly and adequately protect the interests of the Class members and have retained counsel competent and experienced in class litigation.

71.     *Common questions of law and fact*.  Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

      a.     Whether Defendants violated the Illinois Recording Statute by failing to truthfully record each and every, prior and future, mortgage and mortgage assignment on real property located in Illinois with the county recorder of the proper Class member's county recording office;

      b.     Whether Defendants' conduct in violation of the Illinois Recording Statute caused irreparable harm to Plaintiffs and members of the Class and/or the general public;

- 21 -

c.      Whether Defendants should be enjoined from continuing to file false

documents; enjoined from continuing to assign Illinois mortgages without recording each

and every, prior and future, mortgage and mortgage assignment in the proper Class

member's county recording office;

d.      Whether Defendants should be ordered to correct the failure to record each

and every mortgage and mortgage assignment with the county recorder of the proper

Class member's county recording office, including paying the attendant recording fees, as

required by Illinois law; and,

e.      Whether Defendants should pay or disgorge the amount of recording fees

which should have been paid for the non-recorded assignments.

72.     *Declaratory relief appropriate.* This action is properly maintainable as a class

action because Defendants have acted on grounds generally applicable to the Class which makes

final, injunctive, and declaratory relief appropriate with respect to the Class as a whole.

73.     *Superiority.* Class action treatment is superior to other methods for resolution of

this controversy because separate actions by individual Class members might lead to inconsistent

adjudication for individual Class members and impose varying conduct requirements for each

Defendant.  Further, judicial economy would be served by maintenance of this action as a class

action to avoid numerous individual lawsuits filed by Class members, and no difficulties are

likely to be encountered in the management of a class action.

## CLAIMS FOR RELIEF

## COUNT I

## DECLARATORY JUDGMENT AND PERMANENT INJUNCTION

74.     Plaintiffs incorporate by reference all Paragraphs as though set forth in full.

- 22 -

75.     Defendants' systematic failure to record (and pay associated recording fees for) mortgages and mortgage assignments on real property located in Illinois with the county recorder of the county recording office in which the property is located constitutes an actual, existing justifiable controversy between the parties, having opposing interest, which can and should be resolved by this Court through declaratory relief.

76.     Plaintiffs request a judgment declaring that Defendants are required by 765 ILCS 5/28 to record each and every, prior and future, mortgage and mortgage assignment on real property located in Illinois and to pay the attendant statutory recording fees to the county recording office in which the real property is located.

77.     Plaintiffs request that this Court enter an injunction compelling Defendants to record each and every, prior and future, mortgage and mortgage assignment on real property located in Illinois that was not recorded in the proper county recording office, and to immediately cease the practice of non-recording of mortgages and mortgage assignments on real property located in Illinois counties.

## COUNT II

## VIOLATION OF 815 ILCS 505/2

78.     Plaintiffs incorporate by reference all Paragraphs as though set forth in full.

79.     Defendants' actions as alleged above constitute prohibited unfair or deceptive acts or practices in violation of 815 ILCS 505/2. Defendants unfairly and deceptively utilized MERS to avoid accurately recording property interests, transfers, and satisfactions and to prevent landowners and the public from accessing property records.

80.     Defendants' actions were done in the conduct of trade or commerce as contemplated by 815 ILCS 505/2.

- 23 -

81.    As a direct and proximate result of Defendants' violations of 815 ILCS 505/2, Plaintiffs and the Class have suffered substantial damages.

82.    In addition, pursuant to 815 ILCS 505/7, the State's Attorney seeks appropriate injunctive relief, restitution and civil penalties, and pursuant to 815 ILCS 505/10, costs.

## COUNT III

### UNJUST ENRICHMENT

83.    Plaintiffs incorporate by reference all Paragraphs as though set forth in full.

84.    In order to avoid the payment of attendant recording fees to the Class, Defendants failed to record each and every mortgage and mortgage assignment on real property located in Illinois in Plaintiffs' and Class members' county recording offices, in violation of 765 ILCS 5/28.  Defendants continue this illegal conduct.

85.    Instead of properly recording each and every, prior and future, mortgage and mortgage assignment on real property located in Illinois in Plaintiffs' and Class members' county recording offices, Defendants unjustly retained recording fees that in justice and equity belong to Plaintiffs and the Class.

86.    By their wrongful and improper conduct, Defendants were, and are, unjustly enriched at the expense of and to the detriment of Plaintiffs and the Class.

87.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs, on behalf of Union County and the Class, seek restitution from Defendants and respectfully requests that this Court disgorge from Defendants all monies Defendants now hold by their wrongful and improper conduct.

## COUNT IV

### CIVIL CONSPIRACY

88.    Plaintiffs incorporate by reference all Paragraphs as though set forth in full.

- 24 -

89.     As detailed above, Defendants acted in a malicious combination involving two or more persons to cause injury to multiple victims, including but not limited to Plaintiffs and the other members of the Class. Plaintiffs suffered actual harm as a result of the condition created and maintained by Defendants by being prevented from discharging the statutory duties of the County Recorder and being deprived of fees for the recording of instruments required by law to be recorded.

90.     Defendants conspired with and amongst themselves to commit numerous unlawful acts, including but not limited to the systematic failure to record all instruments of writing for conveyance or encumbrance of lands or assignments thereof in violation of 765 ILCS 5/28.

91.     The unlawful activities described above existed independent from the conspiracy itself.

92.     As a direct and proximate result of Defendants' civil conspiracy, and their use of other entities and co-conspirators in that conspiratorial activity, Plaintiffs and the Class have suffered substantial damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.     Determining that this action is a proper class action and certifying Plaintiffs as Class representatives under 735 ILCS 5/2-801;

B.     Declaring that each and every, prior and future, mortgage and mortgage assignment on real property located in Illinois shall be recorded by Defendants with the proper Class members' county recorder in the county recording office in which the property is located, thereby paying Plaintiffs and the Class attendant recording fees;

- 25 -

C.     Permanently enjoining Defendants from failing to record mortgages and mortgage assignments on real property located in Illinois with the country recorder in the recording office in the county in which the property is located;

D.     Ordering restitution and disgorgement of Defendants' profits, benefits, and other compensation Defendants obtained by their wrongful and improper conduct;

E.     Awarding compensatory damages in favor of Plaintiffs and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

F.     Awarding civil penalties against Defendants for each violation of 815 ILCS 505/2;

G.     Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

H.     Such equitable, injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  April 25, 2012.

Respectfully submitted,

*Kelly V Sch for Tyler Edmonds*
Tyler Edmonds
STATE'S ATTORNEY

Stephen W. Stone
HOWERTON, DORRIS & STONE
300 W. Main St.
Marion, IL 62959
Telephone: 618-993-2616
Facsimile: 618-997-1845

- 26 -

Elizabeth A. Fegan
Tom Ahlering
HAGENS BERMAN SOBOL SHAPIRO, LLP
1144 W. Lake Street
Suite 400
Oak Park, IL 60301
Telephone: (708) 628-4949
Facsimile: (708) 628-4950

Terrence F. Durkin
LAW OFFICE OF TERRENCE F. DURKIN
1630 Colonial Parkway
Second Floor
Inverness, IL  60067
(312) 813-7366

Steve W. Berman
Sean R. Matt
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER LPA
One West Fourth Street, 18th Floor
Cincinnati, Ohio  45202-3604
Telephone: (513) 345-8291
Facsimile: (513) 345-8294

*For Plaintiffs*

- 27 -